# Exhibit 1

Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
BRODSKY SMITH
9595 Wilshire Blvd., Ste. 900
Beverly Hills, CA 90212
Telephone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

DAVID MOORE, on behalf of himself and all others similarly situated,

Plaintiff,

vs.

IOVATE HEALTH SCIENCES U.S.A. INC., and DOES 1 – 10,

Defendants.

CASE NO.: 22STCV38938

JUDGE:

DEPT.:

CLASS ACTION COMPLAINT FOR:

(1) VIOLATION OF CAL. CIV. CODE §§1750, *et seq.*

(2) VIOLATION OF UCL, BUS. & PROF. CODE §§ 17200, *et seq.*

(3) VIOLATION OF FAL, Cal. Bus. & Prof. Code §§ 17500 *et seq.*

(4) BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

(5) BREACH OF EXPRESS WARRANTY

**JURY TRIAL DEMANDED**

Plaintiff, David Moore (hereinafter referred to as the "Plaintiff"), by and through his attorneys, on behalf of himself and those similarly situated files this action against defendant Iovate Health Sciences U.S.A. Inc. (hereinafter referred to as "Iovate Health", the "Company", or the "Defendant") and alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

1. Plaintiff brings this class action on behalf of himself and all other persons in the state of California that purchased Purely Inspired Organic Protein Plant-Based Nutritional Shakes (the "Product(s)"). As a result of Defendant's wrongful actions, consumers in California purchased Defendant's Products unaware of that the sodium content contained therein was more than 20% higher than what was listed in the nutritional information, and that consequently, the Products were misbranded, and not fit for sale. Plaintiff seeks, on behalf all persons in the state of California that purchased the Products that were sold and/or distributed in California by Defendant (the "Class"), injunctive relief requiring the Defendant to either (i) stop selling the Products into the State of California; (ii) reduce the amount of sodium in the Product to conform with the Product's label; or (iii) to change the label to reflect the correct amount of sodium in the Product. In addition Plaintiff seeks restitution of all funds acquired by means of these unlawful acts, monetary damages for members of the class equaling the amount of monies members of the class paid for misbranded products that could not be legally sold in the State of California, other compensatory and punitive damages as permitted by law, and an award of attorney's fees and costs.

## THE PARTIES

2. Plaintiff David Moore is a citizen of the state of California. Plaintiff purchased the Product on August 11, 2022.

3. Defendant Iovate Health, together with its affiliated entities, markets health conscious nutrition products worldwide. Iovate Health's brands include MuscleTech, Six Star Pro Nutrition, Purely Inspired, and Hydroxycut, amongst others. Defendant is a corporation organized under the laws of Delaware and has its principal place of business at 1105 North Market Street, Suite 1330, Wilmington, DE 19801.

4. Defendant, Iovate Health markets itself heavily as a company seeking to purport healthy living and provides products that are ostensibly to support a healthier lifestyle amongst its customers. For example, Defendant's website for its "Purely Inspired Nutrition" line of products

contains several statements extolling the nutritional benefits of these products.[1]

## JURISDICTION AND VENUE

5. This Court has original jurisdiction of violations of the violating the California Consumer Legal Remedies Act (the "CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, California Unfair Competition Law (the "UCL"), Cal. Bus. & Prof. Code §§17200 *et seq.*, and California's False Advertising Law (the "FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq*. Venue lies in this County as Plaintiff resides in this County and/or does substantial business here, and a substantial part of the events that are the subject of this action took place in this venue including but not limited to the sale of the Products to the Class.

## SUBSTANTIVE ALLEGATIONS

6. It is well known that an excess consumption of sodium is associated with medical issues such as hypertension, increased risk of cardiovascular disease, chronic kidney disease, osteoporosis, and certain cancers.[2]

7. Consequently, as it is required to do by Federal and State law, Iovate Health labels all of its Products in a manner that lists the respective sodium content in the nutritional label. Such representations constitute an express warranty regarding the Products' sodium content.

8. On August 11, 2022, Plaintiff purchased Purely Inspired Organic Protein Plant-Based Nutritional Shake – Decadent Chocolate, Net Wt. 1.50 lbs. (680g), (the "Product(s)"). He did so, for his personal use, because he wanted a protein powder drink that was low in sodium and purchased the Product based upon the Defendant's representations regarding sodium in the nutritional information label of the Product.

9. Specially, the nutritional label on the Product plainly stated that the Product contains 290mg of sodium per serving.

10. However, Plaintiff became concerned that food, supplement, and other dietary product manufacturers, such as the Defendant, were misleading consumers as to what was actually in their products and their nutritional value.

---

[1] https://www.purelyinspired.com/do-what-makes-you-feel-good/
[2] https://www.hsph.harvard.edu/nutritionsource/salt-and-sodium/

11. As a result, Plaintiff retained counsel to examine the Product and to determine if the representations made by the Defendant were accurate. Plaintiff's counsel performed an investigation of the Product, which included having the Product tested by a laboratory.

12. The results of the laboratory testing revealed that the Product purchased by the Plaintiff contained 383.76 mg of sodium per serving, which was also more than 20% higher than what was listed in the nutritional information label of the Product.

13. Plaintiff's counsel then tested additional samples of the Defendant's Product to determine if the issue was just related to the individual Product purchased by the Plaintiff. Based upon extensive testing commissioned by Plaintiff's attorneys of thirteen different samples in September 2022, the Products were shown to contain between 349.1 mg and 429.0 mg of sodium per serving.[3] Notably, the entirety of this range of thirteen samples, each had more than 20% higher than what was listed in the nutritional information label of the Product.

14. As discussed below, *infra*, because Product contained more than 20% additional sodium than what was stated on the nutritional label it is misbranded and not fit for sale.

15. Pursuant to 21 U.S.C. § 321(f), Defendant's Products constitute a "food" regulated by the Federal Food, Drug, and Cosmetic Act (the "FDCA"), 21 § 301, *et seq.*, and other FDCA regulations. Federal statutes and regulations further prohibit misleading consumers by misrepresenting a Product's nutritional ingredients.

16. Products are violative of federal food labeling regulations, requiring that, "A food with a label declaration of calories, total sugars, added sugars (when the only source of sugars in the food is added sugars), total fat, saturated fat, trans fat, cholesterol, or sodium shall be deemed to be misbranded under section 403(a) of the act if the nutrient content of the composite is greater than 20 percent in excess of the value for that nutrient declared on the label." 21 C.F.R. § 101.9(g)(5).

17. Like the FDCA, the Sherman Law prohibits the misbranding of food. The Sherman Law provides that food is misbranded "if its labeling is false or misleading in any particular." Cal.

---

[3] Such testing was done in compliance with 21 C.F.R. § 101.9(g) *et seq.*

Health & Saf. Code § 109875, *et seq*. The Sherman Law explicitly incorporates by reference "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the FDCA," as the food labeling regulations of California. *See* Cal Health & Saf. Code, § 110100, subd. (a).

18. Defendant's false, deceptive and misleading label statements violate 21 U.S.C. § 343(a)(1) and the so-called "little FDCA" statutes adopted by California, which deem food misbranded when "its labeling is false or misleading in any particular," including California's Sherman Food, Drug, and Cosmetic Law (the "Sherman Law"), Cal. Health & Saf. Code § 109875, *et seq*.

19. Had Plaintiff known that the Product was misbranded and not fit for sale he would not have purchased the product.

20. Had the Plaintiff known that the Product contained more sodium than was listed in the nutritional information label he would not have purchased the product. Rather, as Plaintiff has already done after learning the true amount of sodium in the Product, he would have purchased a different protein powder drink that contained less sodium than was actually found in the Product.

21. Plaintiff, would like to purchase the Product in the future once he can be assured that nutritional information label is accurate and that the Product contains the amount of sodium listed in the nutritional information label. Currently, the Plaintiff is deterred from purchasing the Product because he is unable to rely on the Products labeling.

22. Likewise, Plaintiff would like to purchase the Product in the future if the Product was reformulated to no longer contain additional sodium but is currently hesitant to rely on the Product's nutritional information label because he has no way of knowing whether the reformulation actually would result in the Product containing less sodium and/or the amount of sodium listed in the nutritional information label.

23. On October 4, 2022, pursuant to the Consumer Legal Remedies Act (the "CLRA"), Cal. Civ. Code §1770 and other applicable California law, Plaintiff sent a letter via certified mail (the "Notice Letter") to Iovate Health that provided notice to the Defendant that the sodium content of the Product was more than 20% higher than what was listed in the nutritional information label

of the Product. Plaintiff demanded, inter alia, that Iovate Health bring the Product into compliance with California and Federal laws by either (i) reducing the sodium in any future Products offered for sale in California to accurately reflect current labeling, or (ii) to change the labeling on the Products to reflect the actual sodium content of the Products offered for sale in California.

24. Upon Plaintiff's information and belief no remediation has taken place to cure the violations of Federal and State law regarding the Products as of the date of the filing of this Complaint.

25. The introductions of misbranded and mislabeled food into interstate commerce is prohibited under the FDCA and the Sherman Law.

26. Defendant knew and/or should have known that the Product was both misbranded and mislabeled food.

27. Defendant knew and intended for the Product or its misbranded and mislabeled food to be sold in California.

28. Defendant intended for Plaintiff and members of the Class to be misled.

29. Defendant's sale of misbranded food and its misleading and deceptive practices proximately caused harm to the Plaintiff and members of the Class.

## CLASS ACTION ALLEGATIONS

30. Class actions are certified when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court. Cal. Civ. Proc. Code § 382. The California Supreme Court has stated that a class should be certified when the party seeking certification has demonstrated the existence of a "well-defined community of interest" among the members of the proposed class. *Richmond v. Dart Indus., Inc.*, 29 Cal.3d 462, 470 (1981); *see also Daar v. Yellow Cab Co.*, 67 Cal.2d 695, 704 (1967).

31. It is well settled that Plaintiff need not prove the merits of his action at the class certification stage. Rather, the decision of whether to certify a class is "essentially a procedural one" and the appropriate analysis is whether, assuming the merits of the claims, they are suitable for resolution on a class-wide basis:

> As the focus in a certification dispute is on what types of questions common or individual are likely to arise in the action, rather than on

> the merits of the case, in determining whether there is substantial evidence to support a trial court's certification order, we consider whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment.

*Sav-On Drug Salons, Inc. v. Superior Court*, 34 Cal.4th 319, 327 (2004) (citations omitted).

32. In addition, the assessment of suitability for class certification entails addressing whether a class action is superior to individual lawsuits or alternative procedures for resolving the controversy. *Capitol People First v. State Dept. of Developmental Services* (2007) 155 Cal.App.4th 676, 689.

33. While reserving the right to redefine or amend the class definition prior to or as part of a motion seeking class certification, Plaintiff seeks to represent a Class consisting of all individuals that purchased the Products in the State of California that was marketed, sold and/or distributed by Defendant (the "Class") within the previous six (6) years (the "Class Period").

34. Based upon Defendant's sales of Product, the Class is believed to consist of thousands of members. The members of the Class are so numerous that joinder of all members is impracticable.

35. Common questions of law and fact exist as to all members of the Class, and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

a. Whether Defendant has engaged in unfair and illegal practices;

b. Whether Defendant has engaged in deceptive and illegal practices;

c. Whether Defendant has engaged in fraudulent and illegal practices;

d. The extent to which members of the Class have been injured as a result of these practices;

e. Whether Defendant labeled the Products in a deceptive, false, or misleading manner by misstating the Products' sodium content;

f. Whether these practices amount to unfair methods of competition and unfair or deceptive acts or practices rendering Defendant in violation of California's Consumer Legal Remedies Act, *inter alia*, Cal. Civ. Code §§ 1750 *et seq.*,

including:

i. Whether the Defendant represented that its Products are of a particular standard of quality of which they are not;

ii. Whether Defendant advertises its Products with intent not to sell them as advertised.

g. Whether these practices render Defendant in violation of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*

h. Whether these practices amount to "unlawful", "unfair," or "fraudulent" business acts or practices, rendering Defendant in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code Section 17200 *et seq.*, including:

i. Whether Defendant's sale of the Products in California constitutes "unlawful" or "unfair" business practices by violating the public policies set out in the CLRA, Cal. Civ. Code §§ 1770 *et seq.*, the FAL Cal. Bus. & Prof. Code §§ 17500, and other California and Federal statutes and regulations;

ii. Whether Defendant's sale of the Products is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers;

iii. Whether Defendant's sale of the Products constitutes an "unfair' business practice because consumer injury outweighs any countervailing benefits to consumers or competition, and because such injury could not be reasonably avoided by consumers; and

iv. Whether Defendant's mischaracterization of the sodium contents in its Products constitutes a "fraudulent" business practice because members of the public are likely to be deceived;

i. Whether Defendant has breached an implied contract with Plaintiff and Class members by selling the Products without proper nutritional information labeling, in violation of the FDCA and the Sherman Law;

j. Whether Defendant has breached an implied warranty of merchantability with Plaintiff and Class members by selling the Products without proper nutritional information labeling, in violation of the FDCA and the Sherman Law;

k. Whether Defendant has breached an express warranty to Plaintiff and Class members by selling by selling the Products without proper nutritional information labeling, in violation of the FDCA and the Sherman Law;

l. Whether Defendant was unjustly enriched by Plaintiff and Class members non-gratuitous purchases of the Products that were sold without proper nutritional information labeling, in violation of the FDCA and the Sherman Law;

36. These common questions of law and fact predominate over questions that affect only individual Class Members.

37. Plaintiff's claims are typical of the claims of the members of the Class, as Plaintiff and members of the Class sustained injuries arising out of the Defendant's conduct as complained of herein. Plaintiff, like all other members of the Class, claim that the Defendant has violated state law, including *inter alia*, violating the CLRA, Cal. Civ. Code §§ 1750, *et seq.*, the UCL, Cal. Bus. & Prof. Code §§17200 *et seq.*, and the FAL, Cal. Bus. & Prof. Code §§ 17500 *et seq.*, by illegally marketing, selling and distributing selling the Products without proper nutritional information labeling, in violation of the FDCA and the Sherman Law.

38. Plaintiff will fairly and adequately protect the interests of the members of the Class, and has retained counsel competent and experienced in class action litigation. Plaintiff has no interests antagonistic to, or in conflict with, those of the Class.

39. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, since joinder of all members is impracticable. Furthermore, the expense and burden of individual litigation make it impossible for members of the Class individually to redress the wrongs done to them.

40. Defendant has acted on grounds applicable to the Class, thereby making final injunctive and declaratory relief concerning the Class as a whole appropriate.

41. There will be no difficulty in the management of this action as a class action. Here,

the class seeks injunctive relief to stop of the selling of the Product containing an incorrect amount of sodium and damages in an amount equal to the amount that California class members paid for the misbranded products. Moreover, judicial economy will be served by the maintenance of this lawsuit as a class action, in that it is likely to avoid the burden which would be otherwise placed upon the judicial system by the filing of thousands of similar suits by individuals who have purchased the Products in California in the past six (6) years. There are no obstacles to effective and efficient management of the lawsuit as a class action.

**COUNT I**

**(Violation of the CLRA, California Civil Code §§ 1750, *et seq.*)**

42. Plaintiff re-alleges and incorporates by reference the above allegations set forth in the Complaint as if fully set forth herein. This claim arises under the CLRA and is brought on behalf of Plaintiff and the Class against Defendant.

43. The CLRA prohibits deceptive practices in connection with the conduct of a business that provides, goods, property, or services primarily for personal, family, or household purposes.

44. Defendant's Products are a "good" as defined by the CLRA, Cal. Civ. Code § 1761(a)

45. Defendant is a "person" as defined by the CLRA, Cal. Civ. Code § 1761(c).

46. Plaintiff and members of the Class are "consumers" within the meaning of the CLRA, Cal. Civ. Code § 1761(d) because they purchased the Products for personal, family, or household use.

47. The sale of the Products to Plaintiff and members of the Class is a "transaction" within the meaning of the CLRA, Cal. Civ. Code § 1761(e).

48. Defendant's actions, representations, and conduct violated and continue to violate the CLRA because they extend to transactions that intended to result, or which have resulted in, the sales of goods to consumers.

49. "Unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or

service to any consumer are unlawful." CLRA, Cal. Civ. Code §§ 1750, *et seq*.

50. The CLRA provides in relevant part that "[t]he following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful: (5) Representing that goods. . .have. . .approval, characteristics, uses, benefits. . . which they do not have, (7) Representing that goods. . . are of a particular standard, quality or grade. . . if they are of another, (9) Advertising goods. . . with intent not to sell them as advertised. Civ. Code § 1770(a)(5), (7) and (9).

51. Defendant, by selling the Products, has wrongly represented that the Products contained "290mg Sodium" when the true sodium content was, in fact, greater than 20% more than that amount.

52. Defendant's marketing, distributing and selling of the Products is prohibited pursuant to the CLRA because it is inherently deceptive and was "undertaken by any person in a transaction intended to result or which results in the sale of lease of goods or services to any consumer."

53. Defendant violated the CLRA by knowingly and intentionally marketing, selling and distributing the Products while materially mislabeled in violation of both the FDCA and the Sherman Law.

54. This unfair and deceptive practice violates CLRA § 1770(a)(5), which prohibits "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have…" Defendant wrongly represented that the Products contained "290mg Sodium" when the true sodium content was, in fact, greater than 20% more than that amount.

55. This unfair and deceptive practice also violates CLRA § 1770(a)(7), which prohibits "Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." Defendant wrongly represented that the Products contained "290mg Sodium" when they knew it contained more than 20% more than that amount.

56. The unfair and deceptive practice also violates CLRA § 1770(a)(9), which prohibits "[a]dvertising goods or services with intent not to sell them as advertised." Defendant wrongly advertised on the Products themselves, that the Products contained "290mg Sodium" when they knew it contained more than 20% more than that amount.

57. Defendant's unfair and deceptive acts and practices have violated the CLRA, because they extend to transactions that have resulted, in the sale of goods or services to consumers, including Plaintiff and Class members.

58. As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiff and Class members have suffered damage in that they purchased the Products.

59. As a result of Defendant's conduct, Plaintiff and member of the Class were harmed and suffered actual damages as a result of Defendant's violations of the CLRA because: (a) they would have ingested  the Product which contained more than 20% more sodium than the 290mg listed on the label; (b) they paid a price premium for the Products based on Defendant's misrepresentations; and (c) the Products do not have the characteristics, ingredients, uses, benefits, or quantities as promised, namely the represented sodium content.  Additionally, misbranded food products cannot legally be manufactured, held, advertised, distributed, or sold.  Thus, misbranded food has no economic value and is worthless as a matter of law

60. In accordance with the requirements of Civ. Code § 1782(a), Plaintiff provided Defendant with written notice on or before October 4, 2022, via certified mail, of the allegations within this Count.

61. Defendant has failed to adequately respond to Plaintiff's demand to refund the monies it received and either (i) reducing the sodium in any future Products offered for sale in California to accurately reflect current labeling, or (ii) to change the labeling on the Products to reflect the actual sodium content of the Products offered for sale in California, within 30 days after receipt of the Civil Code § 1782 notice.

62. Plaintiff and the Class are entitled to relief in the form of actual damages, punitive damages, injunctive relief, restitution, and attorneys' fees and costs.

63. In compliance with Cal. Civ. Code § 1780(d), an affidavit of venue is filed concurrently herewith.

**COUNT II**

**(Violation of UCL, Bus. & Prof. Code § 17200, *et seq.*)**

64. Plaintiff re-alleges and incorporates by reference the above allegations set forth in the Complaint as if fully set forth herein.

65. This claim arises under the Unfair Competition Law and is brought on behalf of Plaintiff and the Class against Defendant.

66. The UCL, codified at Bus. & Prof. Code § 17200 et seq., makes it unlawful for a business to engage in a "business act or practice" that is "unfair" or "unlawful" or "fraudulent."

67. An "unlawful" business activity includes "anything that can properly be called a business practice and that is at the same time forbidden by law." *Barquis v. Merchants Collection Assn*., 7 Cal. 3rd 94, 111 (1972). Prohibited "unlawful" practices are any practices forbidden by law whether civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made. *Farmers Ins. Exchange v. Super. Ct.*, 2 Cal. 4th 377, 383 (1992).

68. An act is "unfair" under the UCL if it significantly threatens or harms competition, even if it is not specifically proscribed by another law. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co*., 20 Cal.4th 163, 180, 186-87 (1999).

69. A business practice is "fraudulent" within the meaning of § 17200 *et seq*. if members of the public are likely to be deceived by the business practice. *Bank of the West v. Super. Ct.*, 2 Cal. 4th 1254 (1992); *Committee on Children's Television v. General Foods Corp.*, 35 Cal. 3rd 197 (1983).

70. The UCL authorizes injunctive relief to prevent unlawful, unfair, or fraudulent business acts or practices, and restitution of money or property wrongfully obtained by means of such unfair competition. Cal. Bus. & Prof. Code § 17203.

71. At all times relevant hereto, Defendant has engaged in unlawful, unfair, and fraudulent business practices by virtue of the above-described conduct.

72. Defendant has engaged in an "unlawful" business act by illegally marketing, selling

and distributing the Products to the class in violation of the FDCA and the Sherman Law.

73. The Defendant has engaged in an "unfair" business act by having the Products marketed, sold, and distributed with false labeling, specifically the labeling that the Products contained “290mg Sodium” when in fact, the Products contained more than 20% that amount of sodium. By selling such violative products, when others companies were forced to sell only properly labeled products, Defendant has harmed competition.

74. Because members of the public are likely to be deceived by virtue of the business practices described above into believing that the Products contained “290mg Sodium”, when, in fact, they contained greater than 20% more sodium, Defendant has engaged in fraudulent business practices constituting unfair competition in violation of the UCL, Cal. Bus. & Prof. Code §17200, *et seq*.

75. By marketing, selling, and allowing the Products to be sold with such mislabeling in violation of the FDCA and the Sherman Law, Defendant conduct is also “unlawful”, and is without care for the gravity of the resulting harm, allowed conduct that offends public policy, is immoral, unscrupulous, unethical and offensive, or causes injury to consumers.

76. As a result of Defendant’s conduct, Plaintiff and member of the Class were harmed and continued to be harmed and have suffered and continue to suffer actual damages as a result of Defendant’s violations of the UCL because: (a) they may have ingested Products which contained more than 20% more sodium than 290mg; (b) they paid a price premium for the Products based on Defendant’s misrepresentations; and (c) the Products do not have the characteristics, ingredients, uses, benefits, or quantities as promised, namely the represented sodium content. Additionally, misbranded food products cannot legally be manufactured, held, advertised, distributed, or sold. Thus, misbranded food has no economic value and is worthless as a matter of law

77. Because Plaintiffs’ claims under the “unfair” prong of the UCL sweep more broadly than their claims under the FAL, CLRA, or UCL’s “fraudulent” prong, Plaintiffs’ legal remedies are inadequate to fully compensate Plaintiffs for all of Defendant’s challenged behavior.

78. Plaintiff and the Class are entitled to relief in the form of actual damages, punitive

damages, injunctive relief, restitution, and attorneys' fees and costs.

**COUNT III**

**(Violation of FAL, Cal. Bus. & Prof. Code §§ 17500 *et seq.*)**

79. Plaintiff re-alleges and incorporates by reference all of the above allegations set forth in the Complaint as fully set forth herein.

80. This claim arises under the FAL and is brought on behalf of Plaintiff and the Class against Defendant.

81. California's FAL, Cal. Bus. & Prof. Code §§ 17500, *et seq*., makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, …in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

82. Defendant committed acts of false advertising, as defined by Cal. Bus. & Prof. Code §§ 17500, *et seq*., by misrepresenting that the Products contained "290mg Sodium".

83. Defendant placed a label on its Product indicating that its Products contained "290mg Sodium" per serving size. However, Defendant knew or should have known through exercise of reasonable care that its "290mg Sodium" representation for the Product was false, misleading, and/or deceptive.

84. Defendants' actions in violation of the FAL were false and misleading such that the general public is and was likely to be deceived. Consumers and members of the Class necessarily and reasonably relied on Defendant's statements regarding the contents of the Products. Consumers, and members of the Class were among the intended targets of such representations.

85. As a result of Defendant's conduct, members of the Class were harmed and suffered actual damages as a result of Defendant's violations of the FAL because: (a) they ingested Products that contained more than 20% more sodium than 290mg; (b) they paid a price premium for the Products based on Defendant's misrepresentations; and (c) the Products do not have the characteristics, ingredients, uses, benefits, or quantities as promised, namely the represented

sodium content. Additionally, misbranded food products cannot legally be manufactured, held, advertised, distributed, or sold. Thus, misbranded food has no economic value and is worthless as a matter of law.

86. Because the Court has broad discretion to award restitution under the FAL and could, when assessing restitution under the FAL, apply a standard different than that applied to assessing damages under the CLRA or commercial code (for Plaintiff's breach of warranty claims), and restitution is not limited to returning to Plaintiff's and class members monies in which they have an interest ,but more broadly serves to deter the offender and others from future violations, the legal remedies available under the CLRA and commercial code are more limited than the equitable remedies available under the FAL, and are therefore inadequate.

87. Plaintiff and the Class are entitled to relief in the form of actual damages, punitive damages, injunctive relief, restitution, and attorneys' fees and costs.

**COUNT IV**

**(Breach of Implied Warranty of Merchantability, Cal. Com. Code § 2314)**

88. Plaintiff re-alleges and incorporates by reference all of the above allegations set forth in the Complaint as fully set forth herein.

89. This claim arises from a claim of Breach of Implied Warrant of Merchantability and is brought on behalf of Plaintiff and the Class against Defendant.

90. Defendant is a "merchant" as defined by the Uniform Commercial Code.

91. Plaintiff was a "purchaser" of the Products as defined by the Uniform Commercial Code.

92. The Products that were sold to Plaintiff and Class members were not merchantable at the time of sale. At a minimum, the Products were not fit for the ordinary purposes for which it was to be used because it was unlawful to sell food products that are violative of the FDCA and the Sherman Law. The Products were marketed, sold and distributed by Defendant with inaccurate labeling stating that they contained "290mg Sodium", when in fact, they contained more than 20% that amount, in violation of the FDCA and the Sherman Law. Defendant therefore breached the implied warranty of merchantability in the sale of the Product at issue.

93. Through Defendant's marketing and sales, Defendant knew that Plaintiff and Class members would purchase its violative Products for personal, family, or household use.

94. Defendant manufactured, advertised, sold, and/or distributed the Products for the ordinary purpose for which they were purchased by Plaintiff and the Class.

95. Plaintiff and Class members purchased the Products for their ordinary purpose as a dietary supplement.

96. Class members relied upon Defendant's express and/or implied representations in purchasing this Products.

97. As a result of Defendant's breach, and the Class have been harmed as alleged herein.

98. As a result of Defendant's conduct, Plaintiff and members of the Class were actually and proximately caused injury and suffered actual damages as a result of Defendant's breach of the implied warranty of merchantability: (a) they ingested Products which contained more than 20% more sodium than 290mg; (b) they paid a price premium for the Products based on Defendant's misrepresentations; and (c) the Products do not have the characteristics, ingredients, uses, benefits, or quantities as promised, namely the represented sodium content. Additionally, misbranded food products cannot legally be manufactured, held, advertised, distributed, or sold. Thus, misbranded food has no economic value and is worthless as a matter of law

99. Plaintiff and the Class are entitled to relief in the form of, actual damages arising as a result of Defendant's breaches of express warranty (including, without limitation, expectation damages), punitive damages, injunctive relief, attorneys' fees and costs.

**COUNT V**

**<u>(Breach of Express Warranty, Cal. Com. Code § 2313(1))</u>**

100. Plaintiff re-alleges and incorporates by reference all of the above allegations set forth in the Complaint as fully set forth herein.

101. This claim arises from a claim of Breach of Express Warranty and is brought on behalf of Plaintiff and the Class against Defendant.

102. Defendant is the manufacturer of the Products. The Products are marketed, sold, distributed and implanted into unknowing individuals in the state of California.

103. Defendant manufactured, marketed, distributed and sold the Products with inaccurate labeling regarding the amount of contained sodium in the Products in violation of the FDCA and the Sherman Law.

104. Through the Products' labeling, Defendant made affirmations of fact or promises, or description of goods, that, *inter alia*, the products contained "290mg Sodium".

105. These representations were "part of the basis of the bargain," in that Plaintiffs and the Class purchased the Products in reasonable reliance on those statements. Cal. Com. Code § 2313(1).

106. However, independent laboratory testing shows that the Products do not contain "290mg Sodium" and in fact contain greater than 20% more than that amount.

107. As such, Defendant has breached its express warranties by selling the Products containing greater than 20% more sodium than the listed amount of "290mg Sodium".

108. As a result of Defendant's conduct, Plaintiff and members of the Class were actually and proximately caused injury and suffered actual damages as a result of Defendant's violations of express warranty because: (a) they would ingested Products which contained more than 20% more sodium than 290mg; (b) they paid a price premium for the Products based on Defendant's misrepresentations; and (c) the Products do not have the characteristics, ingredients, uses, benefits, or quantities as promised, namely the represented sodium content. Additionally, misbranded food products cannot legally be manufactured, held, advertised, distributed, or sold. Thus, misbranded food has no economic value and is worthless as a matter of law.

109. Plaintiff and the Class are entitled to relief in the form of, actual damages arising as a result of Defendant's breaches of express warranty (including, without limitation, expectation damages), punitive damages, injunctive relief, attorneys' fees and costs.

## PRAYER FOR RELIEF

WHERFORE, Plaintiff, on behalf of himself and all others similarly situated, and the general public, pray for and demands judgment against Defendant and requests the following relief:

A. That this Court certify the proposed Class;

B. That this Court certify Plaintiff as class representatives on behalf of the Class, and appoint Plaintiff's undersigned counsel as Class Counsel;

C. That this Court issue an Order requiring Defendant to bear the cost of Class Notice;

D. That this Court issue an Order compelling Defendant to conduct a corrective advertising campaign;

E. That this Court issue an Order compelling Defendant to destroy all misleading and deceptive product labels, and to recall all offending products;

F. That this Court issue an Order requiring Defendant to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;

G. That this Court issue an Order requiring Defendant to pay restitution to restore all funds acquired by means of any practice declared by this Court to be unlawful, unfair, or fraudulent business act or practice, or untrue or misleading advertising, plus pre- and post-judgment interest thereon;

H. That this Court issue an Order requiring Defendant to pay compensatory damages and punitive damages as permitted by law;

I. The Court award, injunctive and attorney fees pursuant to CLRA, Cal. Civ. Code § 1750, *et seq*.

J. That the Court enjoin Defendant under Cal. Bus. & Prof. Code § 17203 as follows:

a. To cease such acts and practices declared by this Court to be an unlawful, fraudulent, or an unfair business act or practice, a violation of laws, statutes, or regulations, or constituting an unfair competition;

K. That the Court award Plaintiff, and all those similarly situated, the opportunity to amend or modify the provisions of this Complaint as necessary or appropriate after

additional or further discovery is completed in this matter, and after all appropriate parties have been served;

L. That the Court award reasonable attorney's fees and costs, pursuant to Cal. Code Civ. Pro. § 1021.5, and other statutes as may be applicable, as well as provided by contracts;

M. For prejudgment interest to the extent allowed by law;

N. For costs of suit incurred herein; and

O. That this Court award such other and further relief as it deems necessary, just, proper, and appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: December 15, 2022

BRODSKY SMITH

By: ______________________
Evan J. Smith (SBN242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Beverly Hills, CA 90212
Telephone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*